IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ADMINISTRATIVE COMMITTEE
OF THE WAL-MART STORES, INC.
ASSOCIATES' HEALTH AND
WELFARE PLAN                                              PLAINTIFF

    v.                CASE NO. 05-5007

NANCY LYNN GAMBOA,
BAUDELIO JOSE GAMBOA,
WENDY AURORA GAMBOA, AND
LUCAS TIZOE GAMBOA                                        DEFENDANTS

## MEMORANDUM OPINION AND ORDER

There comes on for consideration the Plaintiff's Motion to Affirm the Decision of the Administrative Committee. (Doc. 22.) Plaintiff's claims are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff contends the Decision of the Administrative Committee of the Wal-Mart Stores, Inc, Associates' Health and Welfare Plan ("Administrative Committee") was neither arbitrary nor capricious and should be affirmed. Defendants disagree and contend that the Decision of the Administrative Committee is arbitrary and capricious as it is based on an unreasonable finding that the Summary Plan Document ("SPD"), which contains the Right to Reduction Reimbursement and Subrogation provision, is part of the Plan. (Doc. 24). This matter is before the Court on the Administrative Record ("AR") and the briefs. For the reasons that follow, Plaintiff's motion is DENIED. The Court finds that the resolution of the Motion to Affirm the Decision of the Administrative Committee resolves all legal issues with no

factual disputes remaining; therefore, the case can properly be resolved. After due consideration, the preliminary injunction on the disputed funds is hereby lifted and Plaintiff's complaint is DISMISSED WITH PREJUDICE.

## I. Background

Except as noted, the facts are not disputed. On February 14, 2002, Defendants were involved in an automobile accident caused by an inebriated driver. (Doc. 23, Administrative Record ("AR"), pp. 19-23, 105.) As a result of the accident, the Defendants were injured, with Defendant Baudelio Jose Gamboa ("Jose") receiving serious, permanent injuries which rendered him disabled and unable to care for himself. *Id.* Defendants Nancy Gamboa and Jose are married. *AR* at 105. At the time of the accident, Nancy Gamboa was employed by Wal-Mart. *See id.* As Nancy Gamboa's spouse, Jose was a covered person pursuant to Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("the Plan"). *See* AR at 1. On Jose's behalf, the Plan paid $177,136.07 to healthcare providers. AR at 53-54.

In March 2003, Defendants filed a wrongful death and personal injury claim action against the bar that served alcohol to the person that caused the automobile accident. *AR* at 19-23. On December 6, 2004, Nancy Gamboa, Wendy Gamboa and Lucas Gamboa settled their claims against the bar for one million dollars. AR at 16-17. That same day, Jose signed a release of liability in

consideration of his family receiving the one-million-dollar settlement and waived his right to any of the proceeds. AR at 14-15. A settlement check in the amount of $982,727.47 was paid to Nancy Gamboa, Wendy Gamboa, Lucas Gamboa, and Corley & Ganem Law Firm. *Id.* at 18, 24.

After the settlement, the Administrative Committee determined that they were entitled to reimbursement of the monies it paid on behalf of Jose. Jose then appealed. *See* AR at 38-39 (letter from Jose's attorney stating that there is no legal obligation to reimburse the Plan). On June 13, 2005, in response to Jose's appeal of the adverse medical benefit determination, the Administrative Committee upheld its decision that Jose must reimburse the Plan for medical benefits paid, in the amount of $177,136.07. (Doc. 23, Administrative Committee Notification.) The Administrative Committee relied upon "the Right to Reduction, Reimbursement and Subrogation provision, which entitle[d] the Plan to 'recover or subrogate 100 percent of the benefits paid or to be paid by the Plan for covered persons to the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident. . . .'" *See Id.* (which appears to be quoting the reimbursement provision contained in the SPD). The Administrative Committee rejected Jose's argument that they were not entitled to reimbursement from the settlement because the settlement paid to Jose's family was not paid on or for his behalf, since he

3

previously signed a release of all claims arising out of the accident. *Id.*

On September 19, 2005, Plan's Appeals Coordinator wrote a letter stating the Administrative Committee's position concerning whether the Plan included the 2002 Associates' Benefits Guide (which served as the SPD). (Doc. 33, Letter, Exhibit 2 to the Affidavit of Christy Herbaugh, Exhibit A).[1] The letter stated that the Committee's position was that the Plan includes the Wrap Document and the SPD, "quoting the portion of the Associates Benefits Book, which states in pertinent part, that 'portions of this book will serve as part of the official plan document for the Associates' Health and Welfare Plan.'" *Id.* at 1. Furthermore, the Administrative Committee rejected the contention that the SPD is not part of the Plan because if it were not part of the Plan, beneficiaries would be left without medical benefits as "[t]he only Plan terms that require and authorize the Plan to pay benefits are found in the Medical section of the [SPD]." *Id.* at 2. "In short, the document that allows the Plan to offset benefits, recover, and subrogate, is the same and only document that requires the Plan to pay benefits." *Id.*

---

[1] Plaintiff provided the 2004 SPD to the Court. (Doc. 23). The 2004 SPD is not relevant to this case. Plaintiff has since provided the Court with the correct 2002 SPD. (Doc. 25.) The Court did not consider the 2004 SPD in making its determinations.

4

## II. ERISA, 29 U.S.C. § 1132(a)(3), Standard of Review.

"The Plan is a self-funded, ERISA-covered Plan." (Doc. 23, Affidavit of Christy Herbaugh, p. 1.; *see* AR p. 26.) Plaintiff is a fiduciary that brought the current case, contending that the Defendants violated the Plan by not reimbursing the Plan with monies obtained from a civil settlement. An ERISA plan fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. . . ." 29 U.S.C. § 1132(a)(3). The standard of review applicable to ERISA cases is *de novo*, unless the plan administrator or fiduciary has been given "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The deferential abuse of discretion standard of review will apply when the administrator/fiduciary has discretionary authority. Additionally, a court may apply a less-deferential standard of review in a case where the administrator/fiduciary has discretionary authority, if the claimants "present material, probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's fiduciary duty to [the claimants]." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998).

AO72A
(Rev. 8/82)

The Plan gives the Plan administrator complete discretionary authority to interpret the Plan provisions and to make findings of fact. (Doc. 33, The Wrap Document, p. 5.) Therefore, absent a showing of a "palpable conflict of interest or serious procedural irregularity," the standard of review will be the deferential abuse of discretion. Defendants have provided no evidence of either a "palpable conflict of interest or serious procedural irregularity." Therefore, the standard of review shall be the discretionary abuse of discretion standard.

The abuse of discretion standard requires an inquiry into whether the plan administrator's decision is reasonable, asking "whether a reasonable person could have reached the same decision." *Wald v. Southwestern Bell Customcare Medical Plan*, 83 F.3d 1002, 1007 (8th Cir. 1996) (citing *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)). The *Wald* Court looked at five factors in determining whether a plan administrator's interpretation is reasonable: "(1) whether the interpretation is consistent with the plan's goals; (2) whether the interpretation renders any of the plan's language meaningless or internally inconsistent; (3) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (4) whether [the plan administrator] has interpreted the words at issue consistently; and (5) whether the interpretation is contrary to the plan's clear language." *Id.* (citing *Finley v. Special Agents Mutual Benefit Association, Inc.*,

6

957 F.2d 617, 621 (8th Cir. 1996)).

A district court generally should not admit evidence outside the administrative record before conducting deferential review "to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir. 1998) (quoting *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641-42 (8th Cir. 1997)) (internal quotes omitted) (additional cite omitted).

### III. REASONABLENESS OF ADMINISTRATIVE COMMITTEE'S DECISION

Defendants contend that the Plan's administrator's interpretation of the Plan was contrary to the Plan's clear language and renders the Plan's language meaningless or internally inconsistent. (Doc. 25, Defendants' Response, p. 3.) The Administrative Committee relies on the SPD Reimbursement provision for its position that the Defendants must reimburse the Plan for medical benefits paid on Jose's behalf. The SPD contains the following paragraph, titled "Right to Reduction, Reimbursement and Subrogation":

> The plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100 percent of the benefits paid or to be paid by the Plan for covered persons to the extent of any and all of the following payments:
>
> • Any judgment, settlement or payment made or to be made because of an accident or malpractice, including but not limited to other

7

>       insurance....
> • Attorney's fees.

(Doc. 25, SPD, dated January 2002, p. 42.)

To support their contention that the SPD reimbursement provision is not part of the Plan, Defendants cite the Court to the Associates' Health and Welfare Plan Wrap Document ("Wrap Document").[2] (Doc. 33.) The Wrap Document defines the term "Plan" as: "'Plan' means the Wal-Mart Stores, Inc. Associates Health and Welfare Plan, as set forth herein, and each Welfare Program incorporated hereunder by reference, as amended from time to time." *Id.* at 2. The Wrap Document defines the term "Welfare Program" as:

> (q) "Welfare Program" means a written arrangement that is offered by one or more Employers and incorporated into this Plan by identification in Appendix A and which provides any employee benefit that would be treated as an "employee welfare benefit plan" under Section 3(1) of ERISA if offered separately. Welfare program also means any plan established pursuant to Section 125 of the Code if incorporated herein by identification I Appendix A. For purposes of this Plan, only the terms of the formal plan document of such arrangement is incorporated herein. *Where no separate formal plan document exists, the plan document shall consist of any applicable insurance policy or contract and the applicable description of such benefits contained in the associate benefits book, as modified from time to time, to the extent consistent with any applicable insurance policy or contact.*

*Id.* at 2-3 (emphasis added).

---

[2]Plaintiff initially provided the Court the 1997 Wrap Document. (Doc. 23.) The Wrap Document at issue in the case *sub judice* is the amended 2001 Wrap Document, which Plaintiff later provided the Court. (Doc. 33.) The Court did not consider the 1997 Wrap Document in its determinations.

8

The plain language of the paragraph "Welfare Program" clearly states that the SPD (as "the applicable description of such benefits contained in the associate benefits book") will be considered part of the Plan if: "(1) there is 'no separate formal plan document' that provides the relevant benefits; 2) the relevant portions of the SPD describe the benefits set forth in 'any applicable insurance policy or contract"; and 3) the relevant portions of the SPD are 'consistent with' that policy or contract." *Cossey v. Associates' Health and Welfare Plan*, 363 F. Supp. 2d 1115, 1130 (E.D. Ark. 2005) (analyzing the identical provisions at issue in the case *sub judice*).[3]

Appendix A does not list the SPD as one of the Welfare Programs under the Plan. Regardless of whether we find a separate formal plan, there has been no evidence submitted to this Court regarding a reimbursement provision contained in any insurance policy or contract. Since the SPD is not listed in Appendix A and the Plan's own language states that the SPD's reimbursement provision cannot be considered to be part of the Plan, the reimbursement provision cannot be part of the Plan. *See Id.* at 1131 (where that court considered the identical reimbursement paragraph and SPD, resulting in the same finding).

---

[3] For resolution of the legal issues in the present case, we adopt and apply the reasoning and logic set forth by Judge Urbom in the *Cossey* decision.

9

Even if this Court could determine that the SPD reimbursement provision was part of the Plan, the result would be the same - that the provision is unenforceable against Defendants.

> [W]hen the plan master document is more favorable to the employee than the SPD, . . . it controls, despite contrary unambiguous provisions in the SPD. The plan master document is the main document that specifies the terms of the plan, and employees should be entitled to rely on its unambiguous provisions. The SPD, on the other hand, should simply summarize the relevant portions of the plan master document.

*Bergt v. Ret. Plan for Pilots Employed by Mark Air, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002).

> Any burden of uncertainty created by careless or inaccurate drafting of the summary must be placed on those who do the drafting, and who are most able to bear that burden, and not on the individual employee, who is powerless to affect the drafting of the summary or the policy and ill equipped to bear the financial hardship that may result from a misleading or confusing document. Accuracy is not a lot to ask.

*Id.* (quoting *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 982 (5th Cir. 1991)). "[T]he law should provide as strong an incentive as possible for employers to write the SPDs so that they are consistent with the ERISA plan master document, a relatively simple task." *Hansen*, 940 F.2d at 1145 (citation omitted). SPDs are created as a "summary" of ERISA plans, not as a separate document in which new benefits/requirements can be created. Therefore, the SPD reimbursement provision in the case *sub judice* was improperly written into the SPD since no Plan provision exists that creates such a right.

10

Plaintiff contends that the reimbursement provision must be an enforceable part of the Plan because the ability to pay any benefits is also only found in the SPD (not the Wrap Document). (Doc. 30, Plaintiff's Reply.) Therefore, the reasoning behind the finding that the SPD reimbursement provision is not part of the Plan and not enforceable will lead to a similar result for the benefits provisions; thus, the Plan will be unable to pay any benefits. *Id.* This argument fails in light of case law on this point, for if an employee relies on a faulty SPD and is prejudiced by that reliance, the SPD terms will prevail. *Palmisano v. Allina Health Systems, Inc.*, 190 F.3d 881, 887-88 (8th Cir. 1999); *Maxa v. John Alden Life Ins. Co.*, 972 F.2d 980, 984 (8th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). Specifically, if a Plan beneficiary relies on the SPD terms for payment of benefits, the SPD terms will prevail. Unlike the current situation, where the Plan's terms–or rather the absence of terms–are more favorable to the employee, the Plan terms prevail.

Additionally, we conclude the SPD does not amend the Plan. The Wrap Document clearly states how the Plan is to be amended:

> The Plan is subject to amendment at any time without consent of the Participants. The procedure for amending the Plan, including the addition or deletion of a Welfare Program from Appendix A, shall consist of the Administrative Committee or its delegate submitting proposed Plan amendments to the Executive Committee of the Board of Directors of the Company, receiving its approval, then communicating the amendments along with the effective date of such amendments to Participants. The purchase of an insurance policy, by either the Company or Plan Administrator, to provide Plan benefits, even though constituting part of the formal plan document, may be done

11

> without compliance with the amendment procedure of this Section . . . if the benefit is properly listed on Appendix A as a Welfare Program. Similarly, an insurance policy providing Plan benefits may be modified by the policy (the Plan Administrator on behalf of the Plan or the Company, as the case may be) without compliance with the amendment procedure of this Section. . . .

(Doc. 33, Wrap Document, pp. 9-10.) There is no evidence that the SPD reimbursement provision was added to the Plan through the Plan's amendment procedures. Therefore, the reimbursement provision could not amend the Plan. *See Cossey*, 363 F. Supp. 2d at 1136-37 (citing *Grosz-Salomon v. Paul Revere Life Insurance Co.*, 237 F.3d 1154, 1161-62 (9th Cir. 2001) (holding that SPD provision granting discretionary authority to the plan administrator is invalid because the term was not part of the policy and did not amend the policy in conformance with the policy's amendment provisions); *Shaw v. Connecticut General Life Insurance Co.*, 353 F.3d 1276, 1282-84 (11th Cir. 2003) (same); *Ludlow v. ADVO-Systems, Inc. Disability Income Plan*, 2004 U.S. Dist. LEXIS 16811, No. 03-4964 MMC, 2004 WL 1844843 at *3-4 (N.D. Cal. Aug. 18, 2004) (holding that SPD provision requiring claimant to present her administrative appeal within 60 days of the claim denial was invalid); *Shultz v. Stoner*, 308 F. Supp. 2d 289, 307 (S.D.N.Y. 2004) ("To hold categorically that an SPD which may well narrow the plans' original participation provisions supersedes the official plan text to the extent there is a conflict would be to permit plan sponsors and fiduciaries to escape obligations undertaken in duly adopted plans by the simple

expedient of disseminating more restrictive SPDs. Such a result would be entirely inconsistent with ERISA's requirements that SPDs be accurate and that plans be administered in accordance with their terms, including compliance with amendment procedures.")).

The Administrative Committee's treatment of the SPD as part of the Plan was unreasonable in that it was contrary to the Plan's clear language, as the Plan does not contain a reimbursement provision and the SPD reimbursement provision failed to amend the Plan. Therefore, the Administrative Committee's decision that reimbursement is required under the Plan was an abuse of discretion. Plaintiff's Motion to Affirm the Decision of the Administrative Committee is DENIED.

## IV. Conclusion

Based on the foregoing and upon due consideration, Plaintiff's Motion to Affirm the Decision of the Administrative Committee is DENIED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. The preliminary injunction on the disputed funds is hereby lifted.

WHEREFORE, before entry of a final judgment in this case, Defendants are directed to file a motion for attorney's fees before February 21, 2006. The Plaintiff will have ten days to file its response.

13

IT IS SO ORDERED this 7th day of February 2006.

    /S/ Robert T. Dawson
Robert T. Dawson
United States District Judge