**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

ADMINISTRATIVE COMMITTEE
OF THE WAL-MART STORES, INC.
ASSOCIATES' HEALTH AND
WELFARE PLAN                                                                    PLAINTIFF

v.                                          Case No.  05-5007

NANCY LYNN GAMBOA,
BAUDELIO JOSE GAMBOA
WENDY AURORA GAMBOA and
LUCAS TIZOE GAMBOA                                                              DEFENDANTS

**MEMORANDUM ORDER AND OPINION**

This case is back before the Court following the remand for consideration of the effect of any

remaining affirmative defenses, including Baudelio Jose Gamboa's ("Jose Gamboa") written release

of any funds received by his wife and two adult children from a tort claim settlement.

**Background**

On February 14, 2003, Nancy Gamboa was driving a car in which Jose Gamboa, Wendy

Gamboa, Lucas Gamboa and June Jones were passengers.  They were involved in an automobile

accident caused by an inebriated driver.  Defendants sustained substantial injuries and another

passenger, June Jones was killed.  At the time of the accident, Nancy Gamboa was employed by

Wal-Mart and enrolled in Wal-Mart Stores, Inc.  Associates' Health and Welfare Plan ("the Plan").

As Nancy Gamboa's spouse, Jose Gamboa was a covered person pursuant to the Plan.  The Plan paid

$177,136.07 to healthcare providers and on behalf of Jose Gamboa.[1]

---

[1] On February 7, 2006, this Court granted Summary Judgment to the Gamobas finding
that the reimbursement provision contained in the Associates Benefits Book did not fit within the
Plan Wrap document's definition of a Welfare Program and, thus, the Committee's decision to

1

In March 2003, Defendants filed a wrongful death and personal injury claim action against the bar that served alcohol to the person who caused the accident.  On December 6, 2004, Nancy Gamboa, Wendy Gamboa and Lucas Gamboa settled their individual claims against the bar for one million dollars.  Jose Gamboa signed a release of liability in consideration of his family receiving the settlement and waived any and all rights against all persons and entities.

The Administrative Committee determined it was entitled to reimbursement of all monies it paid on behalf of Jose Gamboa.  Jose Gamboa appealed the decision and on June 13, 2005, the Administrative Committee upheld its decision.  The Administrative Committee rejected Jose Gamboa's argument that it should  not be reimbursed because settlement funds were not paid on or for Jose Gamboa's behalf.

The Administrative Committee instituted this action on January 13, 2005, against Jose Gamboa, Nancy Gamboa, Wendy Gamboa and Lucas Gamboa seeking to enforce the terms of the Plan as well as for equitable relief under the Employee Retirement Income Security Act of 1974 ("ERISA").  The Administrative Committee filed a motion asking this Court to affirm its decision for restitution and order Defendants to turn over $177,136.07 to them.  The Administrative Committee's argument was rejected as the Court found the reimbursement provision was not officially part of the Plan because it was contained only in the Associate Benefit Book not in the formal Plan Wrap document.  This Court found the Administrative Committee's decision that reimbursement was required under the Plan was an abuse of discretion and denied the Committee's

read it as a plan document was contrary to the plain language of the Plan Wrap documents.  The Eighth Circuit Court of Appeals reversed the decision and held that the Committee's interpretation of the Plan was reasonable and not an abuse of its discretion.  The case was remanded for consideration of the effect, if any, of any remaining affirmative defenses to include Jose Gamboa's written release.

motion to affirm the decision of the Administrative Committee.

The Administrative Committee appealed the decision to the Eighth Circuit Court of Appeals. The Eighth Circuit reversed the decision of the District Court and remanded the case, directing the District Court to resolve the Gamboa's assertion that reimbursement was not permitted because of Jose Gamboa's written release.

**Argument**

Under the Employee Retirement Income Security Act of 1974, § 502(a)(3), as amended, 29 U.S.C.A. § 1132(a)(3), a fiduciary may bring a civil action  "(a) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (b) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

The Supreme Court has addressed the meaning of "appropriate equitable relief" under § 502(a)(3) of ERISA in three cases: *Mertens v.  Hewitt Associates*, 508 U.S. 248 (1993), *Great-West Life & Annuity Insurance Co.  v.  Knudson*, 534 U.S. 204 (2002), and *Sereboff v.  Mid Atlantic Medical Services, Inc.*, — U.S. —, 126 S.Ct.  1869 (2006).

The Court held in *Mertens* that the term "appropriate equitable relief" allows only "those categories of relief that were *typically* available in equity (such as injunction, mandamus and restitution, but not compensatory damages).  *Id.*  at 256.

Later in *Great-West Life & Annuity Insurance Co.  v.  Knudson*, 534 U.S. 204 92002), the Supreme Court continued to distinguish between "legal" and "equitable" relief.  The Court stated, "a plaintiff could seek restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff

3

could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. However, the Court reasoned, "if the property or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." *Id* at 213-14.  In such an instance, the plaintiff is seeking a legal remedy, the imposition of personal liability on the defendant to pay a sum of money which the plaintiff is owed, so his claim falls outside § 502(a)(3)'s jurisdictional grant.  *Id* at 210.

Relying on the discussion in *Great-West*, courts have developed a three part test for determining whether a plan administrator can maintain an action for "appropriate equitable relief" to enforce a reimbursement provision after a plan beneficiary has received compensation from a third party.  "Does the Plan seek to recover funds (1) that are specifically identifiable, (2) that belong in good conscience to the plan, and (3) that are within the possession and control of the defendant beneficiary?" *Bombardier Aerospace Employee Welfare Benefits Plan v.  Ferrer, Poirot & Wainsbrough*, 354 F.3d 348, 356 (5th Cir.  2003); *Admin.  Comm.  of Wal-Mart Stores, Inc.  Assocs. Health & Welfare Plan v.  Varco*, 338 F.3d 680, 687 (7th Cir.  2003); *Calhoon v.  Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005).

In *Sereboff v.  Mid Atlantic Medical Services, Inc.*, —U.S. —, 126 S.Ct.  1869 (2006), an ERISA fiduciary brought suit against plan beneficiaries, seeking reimbursement under the plan's third-party reimbursement provision for amounts paid by the health insurance plan and subsequently recovered by the beneficiaries in their settlement with third-party tortfeasors.  *Id*.  at 1872-73.  The beneficiaries argued that the fiduciary's claim for relief was not equitable and thus disallowed under ERISA.  See *Id.*  at 1873-77.  The Supreme Court disagreed, holding that the fiduciary's action to

enforce the third-party reimbursement provision "qualifie[d] as an equitable remedy because it [was] indistinguishable from an action to enforce an equitable lien established by agreement." *Id.* at 1877. Key to its holding was the Supreme Court's determination that the third-party reimbursement provision "specifically identified a particular fund, distinct from the [beneficiaries'] general assets-all recoveries from a third party . . . -and a particular share of that fund to which [the fiduciary] was entitled-that portion of the total recovery which [was] due [the fiduciary] for benefits paid." *Id.* at 1875.

In determining whether the Administrative Committee can maintain this action as one for "appropriate equitable relief" to enforce the reimbursement provision of the Plan, the three part test set out above must be applied.

A.  Specific Identifiability

In this case, the funds are specifically identifiable.  In *Varco*, *supra*, the court held that where a Defendant established a bank account from the settlement proceeds in the amount of the medical bills, the funds had not been dissipated and were specifically identifiable.  *Id* at 684.  In *Bombardier*, *supra*,  the Court found that the funds were specifically identifiable when the settlement proceeds were placed in a trust account by the beneficiary's law firm.  *Bombardier* at 350.

In this case, the parties agreed, pending the outcome of the lawsuit and exhaustion of all appeals, that $177,136.07, the amount the Administrative Committee was seeking, would be held in an account controlled by Nancy Gamboa and the law firm representing her.  Thus the proceeds of the settlement in an amount equal to the amount sought by the Administrative Committee have not been dissipated and are specifically identifiable.

5

B.  <u>The Plan's Rights to the Funds</u>

The provisions of the Plan regarding the reimbursement and right of recovery state, "The Plan has the right to 1) reduce or deny benefits otherwise payable by the Plan and 2) recover or subrogate 100 percent of the benefits paid or to be paid by the Plan for covered persons to the extent of any and all of the following payments: Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance."  "The Plan has first priority with respect to its right to reduction, reimbursement and subrogation." "The Plan's right to reimbursement applies when the Plan pays medical benefits, and a judgment, payment or settlement is made on behalf of the covered person for which the medical benefits were paid. Reimbursement to the Plan of 100 percent of these changes shall be made at the time the payment is received by you, your attorney or any other person on your behalf."

The Plan has "the right to recover or subrogate 100 percent of the benefits paid . . . by the Plan for covered persons. The source of payments listed by the Plan which are subject to reimbursement include "any judgment, settlement or payment made on or to be made, because of an accident or malpractice, including but not limited to other insurance."

Subrogation is generally defined as the substitution of one person in the place of another with reference to a lawful claim or right. *Universal Title Ins. Co.  v.  U.S.*, 942 F.2d 1311, 1315 (8th Cir. 1991) citing 73 AmJur.2d *Subrogation* § 1 (1974).

The Arkansas Supreme Court has stated, "under subrogation, the payor who is the subrogee steps into the shoes of the payee and becomes subrogated to whatever rights the payee had against a wrongdoer." *St.  Paul Fire & Marine Insurance Co.  v.  Murray Guard, Inc.*, 343 Ark.  351, 357, 37 S.W.3d 180, 184 (2001). "In *St.  Paul Fire & Marine Insurance Co., supra*, we said subrogation

6

is an equitable remedy that rests upon principles of unjust enrichment and attempts to accomplish complete and perfect justice among the parties. *Id.* (citing *Blackford v. Dickey*, 302 Ark. 261, 789 S.W.2d 445 (1990); and *Baker v. Leigh*, 238 Ark. 918, 385 S.W.2d 790 (1965). We have further said that the elements of subrogation are as follows: 1) a party pays in full a debt or an obligation of another or removes an encumbrance of another, 2) for which the other is primarily liable, 3) although the party is not technically bound to do so, 4) in order to protect his own secondary rights, to fulfill a contractual obligation, or to comply with the request of the original debtor, 5) without acting as a volunteer or an intermeddler. *Id.* (citing *Blackford v. Dickey, supra*). Finally, we have said that subrogation is a doctrine of equity governed by equitable principles. *Id.* (citing *Cooper Tire & Rubber Co. v. Northwestern National Cas. Co.*, 268 Ark. 334, 595 S.W.2d 938 (1980); and *Federal Land Bank of St. Louis v. Richland Farming Co.*, 180 Ark. 442, 21 S.W.2d 954 (1929)).

The Administrative Committee seeks reimbursement for medical benefits paid on behalf of Jose Gamboa pursuant to the subrogation language of its Plan. The Plan paid the medical bills Jose incurred as a result of the accident and the Plan is entitled to "any judgment, settlement or payment made because of an accident." However, Jose Gamboa did not receive a judgment or settlement from the accident which caused his injuries as required by the Plan. Further, his attorney has not received any payments on his behalf. There is no one who has received a settlement or judgment on Jose Gamboa's behalf for the injuries he suffered as a result of the wreck. The money in the account was received on behalf of Nancy Gamboa, Wendy Gamboa and Lucas Gamboa for the serious injuries they received in the accident. The Administrative Committee is not seeking nor is it entitled to funds received by the other persons injured in the accident, for it would only be entitled to reimbursement from funds received by or on behalf of Jose.

7

Based upon the foregoing, this Court can only conclude that the Administrative Committee has no right to the funds in question as those funds were clearly received and are the proceeds from the individual settlement Nancy Gamboa, Lucas Gamboa and Wendy Gamboa made with the third party.

C. Possession and Control of the Funds

The final factor requires the defendant beneficiary to be in possession and control of the funds sought by the Administrative Committee. In *Great West*, the Supreme Court decided that equitable restitution was not an available remedy because the funds claimed by the plan fiduciary were not in the plan beneficiary's possession, but had been placed in a Special Needs trust as required by California law, and a client trust account. *Id* at 214.

Similarly, in *Bauhaus USA, Inc. v. Copeland*, 292 F.3d 439 (5th Cir. 2002), the Fifth Circuit held funds, resulting from a settlement with a third-party tortfeasor deposited into the registry of the court while the ERISA governed plan and the guardian contested ownership of the funds in federal court, were not in the possession and control of the beneficiary because the court was totally independent of the plan beneficiary. *Id* at 445.

Again in *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003), the tortfeasor settled with the plan member and made the payment with a check issued to the plan member, her attorney and Primax. Primax held the check and refused to sign it because the attorney claimed he was entitled to fees. *Id* at 546. The Seventh Circuit found that because the plan member never held the funds in question, the suit was one for monetary damages rather than equitable relief. *Id* at 547-48.

Jose Gamboa is not in possession of any settlement proceeds. He cannot and does not

exercise any control over the funds and cannot be deemed to be in constructive possession of the funds.  The facts are similar to the above referenced cases, for even if it could be argued that Jose Gamboa  at some point may be entitled to part of the settlement funds, he was never  in possession and has  waived all rights to those funds.  "A waiver occurs when a party 'with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely on that right . . The relinquishment of the right must be intentional.'" *Heating & Air Specialists, Inc.  v. Jones*, 180 F.3d 923, 937-38 (8th Cir.  1999) citing *Lester v.  Mount Vernon-Enola Sch.  Dist.*, 323 Ark.  728, 917 S.W.2d 540, 542 (Ark. 1996).  Jose Gamboa relinquished all rights to the funds in question when he executed the waiver. Those funds are in the possession of Nancy Gamboa and her attorneys and were received as part of the settlement made on behalf of Nancy Gamboa and her two children.

The Administrative Committee is seeking compensatory damages, for the funds it lost as a result of Jose Gamboa's waiver of his claims to the settlement proceeds and his failure to cooperate as required by the Plan.  As such, the requested relief is not recoverable as "appropriate equitable relief" under ERISA § 1132(a)(3).  "Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again.  Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." *Kerr v.  Charles F.  Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir.  1999) citing 1 Dan B.  Dobbs, *Law of Remedies* § 4.1(1), at 369-71 (2d ed.  1993)); see also *Knieriem v. Group Health Plan, Inc*., 434 F.3d 1058, 1062 (8th Cir.  2006).  As the Supreme Court observed in *Knudsen*, "petitioners seek, in essence, to impose personal liability on respondents for a contractual obligation to pay money, relief that was no typically available in equity." *Id.*  at 210.  The Court

noted, "a claim for money due and owing under a contract is quintessentially an action at law." *Id.* (quoting *Wal-Mart Stores, Inc. v. Wells*, 213 F.3d 398, 401 (7th Cir. 2001)).

### Conclusion

Plaintiff is seeking a legal remedy not available under ERISA. Jose Gamboa is not in possession or control of the funds in question and Plaintiff has no rights to the funds as they are the result of a settlement made between the third-party tortfeasor, Nancy Gamboa, Lucas Gamboa and Wendy Gamboa. We cannot and should not, reconstruct the settlement agreement of the parties.

Based upon the foregoing and upon due consideration, Plaintiff's Complaint is DISMISSED WITH PREJUDICE. The preliminary injunction on the disputed funds is hereby lifted.

It is so ordered this 9th day of July, 2007.

> */s/Robert T. Dawson*
> Robert T. Dawson
> United States District Judge